In the

# United States Court of Appeals

For the Seventh Circuit



CERTIFIED COPY

_____

No. 19-1855

GABRIELLA SILER, et al.,

          *Plaintiffs-Appellants*,

*v.*

CITY OF KENOSHA, et al.,

          *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cv-01324 — **David E. Jones**, *Magistrate Judge*.

_____

ARGUED NOVEMBER 8, 2019 — DECIDED APRIL 29, 2020

_____

Before RIPPLE, ROVNER, and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Aaron Siler's estate and his daughter, Gabriella (collectively, "Ms. Siler"), brought this action in the district court against Officer Paul "Pablo" Torres ("Officer Torres"). Predicating their claims on 42 U.S.C. § 1983, they alleged that Officer Torres employed unconstitutionally excessive force when he shot and killed Mr. Siler. This confrontation took place after Officer Torres, following the orders of his dispatch, had attempted to apprehend Mr. Siler.

Ignoring the Officer's orders, Mr. Siler ran and eventually sought cover in a garage where Officer Torres, who had given chase, confronted him.

Ms. Siler also sought relief from the City of Kenosha pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The district court granted the defendants' motion to bifurcate the trial on the unreasonable force claim against Officer Torres from trial on the *Monell* claims against the City of Kenosha.

Addressing first the claim against Officer Torres, the district court granted Officer Torres's motion for summary judgment on the ground of qualified immunity. It held that a genuine issue of triable fact prevented it from determining whether Officer Torres violated the Constitution. The court determined, however, that, at the time the Officer acted, there was no clear legal precedent that forbade his acting as he did. Invoking Rule 54(b) of the Federal Rules of Civil Procedure, the court then directed entry of a final judgment on its summary judgment decision in favor of Officer Torres. There has been no final judgment with respect to Ms. Siler's claims against the City of Kenosha.[1] The plaintiffs timely filed their notice of appeal.

---

[1] Ms. Siler contends that the district court abused its discretion in granting the motion to bifurcate the claims against Officer Torres and against the City of Kenosha. We lack jurisdiction to review the district court's order bifurcating the trial. In Ms. Siler's view, the appeal of the final judgment, that is, the grant of summary judgment on the excessive force claim, allows for appeal of the bifurcation order. Ms. Siler contends that appealing the final judgment "brings up for review" all earlier rulings of the district court that are adverse to the appellant, "except those that

(continued … )

The district court properly granted summary judgment to Officer Torres. On the first prong of the qualified immunity inquiry, however, we respectfully part company with the district court and hold, as a matter of law, that Officer Torres's action conformed to constitutional standards. On this basis, we affirm the grant of summary judgment.

# I.

## BACKGROUND

On March 14, 2015, at approximately 9:35 a.m., Officer Torres of the Kenosha Police Department was on vehicle patrol when he received a call from dispatch requesting

---

( … continued)

have become moot." App. R.23 at 3 (quoting *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 689 (7th Cir. 1998)).

The bifurcation order is neither a final judgment that can be appealed, nor an earlier ruling that is "brought up" by the appeal of a final judgment. Our appellate jurisdiction is limited to appeals from a final decision of a district court. 28 U.S.C. § 1291; *United States v. Henderson*, 915 F.3d 1127, 1130 (7th Cir. 2019). "[A] decision is final for the purpose of § 1291 if it ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 666 (7th Cir. 1986). By contrast, "'[a] separate trial order under Rule 42(b) is interlocutory and non-appealable.'" *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003)). "It is settled" that "[s]uch orders are appealable *only* by certification and permission under 28 U.S.C. § 1292(b) or if they fall within the 'collateral order' doctrine." *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1335 (7th Cir. 1977) (emphasis added) (citations omitted). Because neither of those circumstances is present here, we do not have jurisdiction to review the district court's bifurcation ruling.

assistance apprehending Mr. Siler. The dispatcher told Officer Torres that there was a warrant for Mr. Siler for strangulation and suffocation. From the information provided, Officer Torres also understood that Mr. Siler had taken a vehicle without consent and was known to have violent tendencies. As it turned out, Mr. Siler did not have a warrant for strangulation and suffocation; instead, he was wanted for violating probation and parole. Officer Torres was not aware of the error at the time.

When Officer Torres spotted Mr. Siler driving through an intersection, he activated his emergency lights and siren. Mr. Siler did not stop. Instead, with Officer Torres in pursuit, he made several quick turns onto residential side streets, ignoring traffic signs and speed limits. The chase, which lasted roughly three minutes, ended when Mr. Siler crashed his car into a tree, sideswiped another vehicle, and fled on foot.

Officer Torres left his car and pursued Mr. Siler. At the time, Officer Torres was forty-two years old, stood five feet and seven inches tall, and weighed 155 pounds; Mr. Siler was twenty-six years old, six feet and four inches tall, and 243 pounds. The Officer yelled commands at Mr. Siler, including "stop," "police," and "get on the ground."[2] Mr. Siler did not obey.

At one point during the foot chase, Mr. Siler outran Officer Torres, and Officer Torres momentarily lost sight of him. Catching sight of him again, Officer Torres renewed the pursuit and followed him into a garage of an auto body re-

---

[2] R.64 ¶ 34.

No. 19-1855 5

pair shop. Juan Carlos Salinas was standing near the entrance to the garage. His brother, Antonio Salinas Jaimes, was inside. As Officer Torres approached the entrance, Salinas gestured as if to indicate that Mr. Siler was inside. When Officer Torres entered the garage, he saw Jaimes holding a baseball bat.

The following diagram shows an approximate overhead view of the garage.



---

[3] R.48-3 at 1 (Torres Decl. Ex. C).

No. 19-1855　　　　　　　　　　　　　　　　　　　　　　7

An SUV is shown parked at an angle inside the garage, facing away from the open garage door. The notation on the driver side indicates Officer Torres's approximate location; the "X" on the passenger side indicates Mr. Siler's approximate location.

When Officer Torres entered the garage, Mr. Siler was hiding in a back room. Officer Torres yelled, "[W]here is he at?"[4] Jaimes responded that Mr. Siler was in the back room. Officer Torres called several times for Mr. Siler to come out from the back room. Mr. Siler exited the back room and attempted to flee the garage through the open garage door, but Officer Torres, who was standing in the open doorway, blocked the exit. Mr. Siler moved to the passenger side of the SUV.

The sequence of events that occurred next lasted less than thirty seconds. Officer Torres moved to the driver side of the SUV and yelled at Mr. Siler to get on the ground. Officer Torres and Mr. Siler were positioned on opposite sides of the SUV. Mr. Siler was on the passenger side, between the vehicle and the wall of the garage. Officer Torres was on the driver side. Salinas and Jaimes were somewhere behind the Officer.

Officer Torres and Mr. Siler then began to move in "cat and mouse"[5] fashion along their respective sides of the SUV: if Officer Torres moved to the front-driver side of the SUV, Mr. Siler moved to the back-passenger side; if Officer Torres

---

[4] R.64 ¶ 57.

[5] *Id.* at ¶ 61.

moved to the back-driver side, Mr. Siler moved to the front-passenger side. The garage door toward the back of the SUV remained open throughout the "cat and mouse" exchange. Mr. Siler had an unobstructed path to his left that led to the open garage door.

By this time, Officer Torres had his service revolver out and he pointed it at Mr. Siler. Officer Torres ordered Mr. Siler to the ground. Mr. Siler refused, responding, "fuck you," "no," and "shoot me."[6] Officer Torres observed that Mr. Siler began looking down at the ground and then up at Officer Torres. Officer Torres could not see Mr. Siler's hands. Mr. Siler bent over and, when he stood up, Officer Torres saw a black cylindrical object pressed against Mr. Siler's forearm. Officer Torres yelled at Mr. Siler to "drop it" and "get to the ground," to which Mr. Siler again responded, "fuck you," "no," and "shoot me."[7] Officer Torres still could not see Mr. Siler's hands.

The parties dispute the precise details of Mr. Siler's next action. Ms. Siler contends that Mr. Siler left the side of the vehicle and went into the back room to pick up a plastic bucket. Officer Torres contends that he did not see Mr. Siler leave the side of the vehicle and did not see a plastic bucket prior to the shooting. Officer Torres states, and Ms. Siler does not dispute, that he saw Mr. Siler bend down a second time at the side of the vehicle and make another grabbing motion. Viewing the facts in the light most favorable to Ms. Siler, we draw the inference that Mr. Siler went to the

---

[6] *Id.* at ¶ 72.

[7] *Id.* at ¶¶ 77–78.

back room and picked up a bucket. What is undisputed is that just before the shooting, Officer Torres still could not see Mr. Siler's hands.

While on the passenger side of the SUV, Mr. Siler made a step to the right, toward the front of the vehicle and in the opposite direction of the open garage door. There were approximately ten to twelve feet between the two men. When Mr. Siler stepped to the right, Officer Torres began shooting at Mr. Siler, firing seven times successively without pausing between shots. Six bullets struck Mr. Siler's upper torso. Mr. Siler died from gunshot wounds.

## II.

## DISCUSSION

The basic principles that govern our analysis are well established. "A police officer's use of deadly force constitutes a seizure within the meaning of the Fourth Amendment, and therefore it must be reasonable." *Scott v. Edinburg*, 346 F.3d 752, 755 (7th Cir. 2003). Ms. Siler claims that Officer Torres's use of deadly force was unreasonable, and thus, unconstitutional. She correctly invokes 42 U.S.C. § 1983 as the predicate for her cause of action. This section provides a cause of action against public officers who violate the rights of individuals. *See Weinmann v. McClone*, 787 F.3d 444, 447 (7th Cir. 2015).

Officer Torres has raised a defense of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, to prevail,

Ms. Siler must carry the burden of proof to show: (1) that Officer Torres's use of deadly force was objectively unreasonable and therefore a constitutional violation, and (2) that Officer Torres violated a clearly established right such that he was "on notice that his conduct would be clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). If Ms. Siler cannot establish that Officer Torres violated a clearly established right, he is entitled to qualified immunity even if he employed unreasonable force. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (explaining that qualified immunity protects officers except those who are plainly incompetent or those who knowingly violate the law).

Although *Saucier* instructed us to consider these two questions in the sequence set forth in that opinion's text,[8] the Supreme Court has since loosened this requirement. We now have the discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Nonetheless, the Court also reminded us that "the *Saucier* procedure 'is often beneficial' because it 'promotes the development of constitutional precedent.'" *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (quoting *Pearson*, 555 U.S. at 236). In the case before us, we believe that our obligation to provide further guidance to the bench and bar and to the law enforcement community counsels that we employ the *Saucier* sequential protocol and address the merits of the constitutional question presented.

---

[8] *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

No. 19-1855                                                          11

The Fourth Amendment protects individuals from law enforcement officers' unreasonable use of deadly force in effecting an arrest. In *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), the Supreme Court stated this basic principle bluntly: "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Garner*, 471 U.S. at 8). In making this determination, we must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* However, there can be no question that "[d]eadly force may be used if the officer has probable cause to believe that the armed suspect (1) 'poses a threat of serious physical harm, either to the officer or to others,' or (2) 'committed a crime involving the infliction or threatened infliction of serious physical harm' and is about to escape." *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) (quoting *Garner*, 471 U.S. at 11–12).

The principle established in *Garner* and applied in *Muhammed* establishes an objective standard. *See Graham*, 490 U.S. at 396. We assess the totality of the circumstances "from the perspective of a reasonable officer on the scene." *Id.* This perspective is critical. "[A] court must consider the amount and quality of the information known to the officer at the

time." *Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018) (internal quotation marks omitted). In seeking to understand the perspective of the officer on the scene, we must consider: the information known to the officer at the time of the encounter; the duration of the encounter; the level of duress involved; "and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances." *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018); *see also Graham*, 490 U.S. at 396–97. Law enforcement officers on the scene do not have the luxury of knowing the facts as they are known to us, with all the benefit of hindsight, discovery, and careful analysis. Officers must act reasonably based on the information they have. We must always keep in mind that encounters in the field require officers to make split-second decisions of enormous consequence. If a reasonable officer in Officer Torres's shoes would have believed that Mr. Siler posed an imminent threat of serious physical harm, or that he had committed a crime involving serious physical harm and was about to escape, the Officer's use of force was reasonable. *See Garner*, 471 U.S. at 11.

The obligation to consider the totality of the circumstances in these cases often makes resort to summary judgment inappropriate.[9] Nevertheless, if a careful examination of the papers reveals that the *material facts* are undisputed, and if a

---

[9] *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (observing that because "the *Graham* reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom … summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly") (internal quotation marks omitted).

No. 19-1855 13

court draws all inferences from those facts in favor of the nonmovant, reasonableness is a pure question of law. *See Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). Of course, when *material* facts are disputed, a jury must resolve those disputes and determine whether the officer acted reasonably. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010). Indeed, in *Cyrus*, we noted that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations," particularly where "the one against whom force was used has died, because the witness most likely to contradict the officer's testimony—the victim—cannot testify." *Id.* On the other hand, we may consider reasonableness as a matter of law when there are sufficient undisputed material facts to draw a conclusion. *See Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

With these principles in mind, we now turn to the record before us. Our examination of that record confirms, as Ms. Siler maintains, that there is a dispute between the parties as to whether Mr. Siler left the side of the SUV and went to a nearby room to retrieve a bucket. We therefore must assume, for purposes of summary judgment, that this event did take place and draw all reasonable inferences in favor of Ms. Siler. Even if we do so, however, our temporal focus must remain on what Officer Torres knew at the time he shot Mr. Siler.[10] At that time, it is undisputed that Mr. Siler, ignor-

---

[10] Ms. Siler does not dispute that Officer Torres was entitled to consider all the information that had been conveyed by the dispatcher, even though, unknown to him, some of that information was erroneous. Nor would such an argument be meritorious. "Knowledge of facts and cir-

(continued … )

ing the possibility of escape through the open garage door just past the rear of the SUV, had defied belligerently Officer Torres's command by daring the Officer to shoot him. Then, while holding something in his hand—recall that Officer Torres could not see Mr. Siler's hands—he stepped in the direction of the Officer. From the Officer's perspective, Mr. Siler was a significantly larger and younger man who had a reputation for physical violence. He had refused every opportunity to surrender during the chase, and, critically, had decided to change the status quo of a standoff. Despite the fact that the Officer had his service revolver in his hand, Mr. Siler chose to become the aggressor. To Officer Torres, the possibility of being overcome, or at the very least disarmed, was a real one. To have someone in Mr. Siler's aggressive state of mind—recall that Mr. Siler had just dared the Officer to shoot him—gain possession of the service revolver and be able to use it against the Officer or the two bystanders in the garage was, to put it mildly, an unacceptable outcome. The Officer had the right to protect himself and the bystanders through the use of deadly force. "'[W]hen an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of

---

( … continued)

cumstances gained after the fact … has no place in the … post-hoc analysis of the reasonableness of the actor's judgment." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988). *See Horton v. Pobjecky*, 883 F.3d 941, 951 (7th Cir. 2018) (observing that "we may not consider the fact that it turned out Michael was unarmed because Pobjecky did not know that, and had no reasonable way to know that, at the time"). At the time he received the information from dispatch, Officer Torres had no reasonable way to know that it was inaccurate.

death or serious bodily injury, the officer can reasonably exercise the use of deadly force.'" *Muhammed*, 316 F.3d at 683 (alteration in original) (quoting *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988)). Because his use of force was reasonable, Officer Torres did not violate Mr. Siler's Fourth Amendment rights.

Because there was no violation of Mr. Siler's Fourth Amendment rights, the City of Kenosha could not have incurred any liability under the *Monell* doctrine.

The judgment of the district court is affirmed.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

April 29, 2020

Before:    KENNETH F. RIPPLE, Circuit Judge
ILANA DIAMOND ROVNER, Circuit Judge
DIANE S. SYKES, Circuit Judge

| No. 19-1855 | GABRIELLA SILER, et al., Plaintiffs - Appellants  v.  CITY OF KENOSHA, et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:17-cv-01324-DEJ  Eastern District of Wisconsin  Magistrate Judge David E. Jones ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

  form name: **c7_FinalJudgment**(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse  
Room 2722 - 219 S. Dearborn Street  
Chicago, Illinois 60604

Office of the Clerk  
Phone: (312) 435-5850  
www.ca7.uscourts.gov

## BILL OF COSTS

May 21, 2020

Taxed in Favor of: **Appellees City of Kenosha, Wisconsin and Paul E. Torres**

| No. 19-1855 | GABRIELLA SILER, et al., Plaintiffs - Appellants<br><br>v.<br><br>CITY OF KENOSHA, et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:17-cv-01324-DEJ<br>Eastern District of Wisconsin<br>Magistrate Judge David E. Jones ||

The mandate or agency closing letter issued in this cause on May 21, 2020.

BILL OF COSTS issued in the amount of: $117.00.

|   |   | Cost of Each Item | Total Cost Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: | | |
| 2. | For reproduction of any record or paper, per page: | | |
| 3. | For reproduction of briefs: | | $117.00 |
|   | TOTAL: | | $117.00 |

form name: **c7_BillOfCosts**(form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 21, 2020

To:     Gina M. Colletti
        UNITED STATES DISTRICT COURT
        Eastern District of Wisconsin
        Milwaukee , WI 53202-0000

| | |
|---|---|
| No. 19-1855 | GABRIELLA SILER, et al., Plaintiffs - Appellants<br><br>v.<br><br>CITY OF KENOSHA, et al., Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:17-cv-01324-DEJ<br>Eastern District of Wisconsin<br>Magistrate Judge David E. Jones | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| | |
|---|---|
| AMOUNT OF BILL OF COSTS (do not include the $): | 117.00 |
| | |
| DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE: | 05/21/2020 |
| | |

RECORD ON APPEAL STATUS:   No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                                   **Received by:**

05/21/20                                                    s/Jelena Vekic
_____                                     _____

form name: **c7_Mandate**(form ID: **135**)